UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ALERDING CASTOR HEWITT LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-02453-JPH-MJD |
| | ) | |
| PAUL FLETCHER, | ) | |
| CAROLE WOCKNER, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON POST-JUDGMENT MOTIONS**

On September 13, 14, and 15, 2021, the Court held a jury trial in this case, resulting in a verdict of $67,423.24 for Plaintiff, Alerding Castor Hewitt LLP. *See* dkt. 264; dkt. 265; dkt. 266; dkt. 268 (jury verdict). On September 16, 2021, the Court entered final judgment for Alerding Castor for that amount plus $27,623.82 in prejudgment interest. Dkt. 271; *see* dkt. 270. Defendants, Paul Fletcher and Carole Wockner, have filed three post-judgment motions: (1) to vacate the award of prejudgment interest, dkt. 272; (2) to set aside the final judgment, dkt. 275; and (3) for a new trial, dkt. 276.

**A. Rule 59(e) Motion on Prejudgment Interest**

Defendants have filed a motion under Federal Rule of Civil Procedure 59(e), arguing that the award of prejudgment interest should be vacated because (1) awarding prejudgment interest during delays "due to COVID-19 is a disparate and prejudicial hardship," (2) the monetary damages were not clear enough to support prejudgment interest, and (3) the jury had insufficient time to fully evaluate the evidence. Dkt. 272. Alerding Castor responds that

1

prejudgment interest is justified under Indiana law because of its lost use of the funds. Dkt. 273.

### 1. COVID-19 Delay

Defendants argue that prejudgment interest from the time that COVID-19 delayed trial should "be borne equally" by the parties to avoid "a disparate and prejudicial hardship" on them. Dkt. 272 at 1. Alerding Castor responds that prejudgment interest is appropriate because it "continued to suffer the lost use of funds that Defendants owed" during that time. Dkt. 273 at 1.

While COVID-19 substantially delayed trial in this case, that delay does not affect whether prejudgment interest is appropriate. *See* dkt. 219 (continuing the March 23, 2020 trial date). Instead, "[p]rejudgment interest is intended to compensate a plaintiff for delay in receiving money it should have received much earlier or should not have been required to spend in the first place." *BRC Rubber & Plastics, Inc., Continental Carbon Co.*, 981 F.3d 618, 635 (7th Cir. 2020) (quoted in dkt. 270). Here, the damages that the jury awarded were unpaid during the COVID-19 delay, so Alerding Castor is entitled to interest during that time "to fully compensate [it] for the lost use of money." *Cincinnati Ins. Co. v. BACT Holdings, Inc.*, 723 N.E.2d 436, 441 (Ind. Ct. App. 2000); *see Care Grp. Heart Hosp. LLC v. Sawyer*, 93 N.E.3d 745, 757 (Ind. 2018) ("To receive a prejudgment interest award, a party needs to show only

that the obligor breached the contract by failing to pay the appropriate amount by a particular time.").[1]

### 2. Ability to Ascertan Damages

"Under Indiana law, interest may be awarded where the value of the damages is not in dispute and the damages are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time the damages accrued." *BRC Rubber*, 981 F.3d at 635 (quoted in dkt. 270). "This standard leaves considerable play in the joints," so prejudgment interest calculations are committed to the Court's discretion. *Id.* "Even where the amount of actual damages is partly in dispute, courts applying Indiana law regularly award prejudgment interest." *Id.*

Here, Defendants argue that Alerding Castor's damages were not ascertainable because "the jury had to consider . . . whether the fees claimed by Plaintiff were reasonable." Dkt. 272 at 3. Alerding Castor responds that Indiana law allows prejudgment interest after reasonableness determinations. Dkt. 273 at 2.

Indiana's longstanding rule is that attorney-fee damages can support prejudgment interest even though they require a reasonableness determination

---

[1] In reply, Defendants cite dicta from the Indiana Court of Appeals saying that awarding prejudgment interest under Indiana's Tort Prejudgment Interest Statute for time during the COVID-19 pandemic "would not advance" the statute's goal of influencing litigants' behavior. Dkt. 274 at 1 (quoting *Denman v. St. Vincent Med. Grp., Inc.*, 176 N.E.3d 480, 505 (Ind. Ct. App. 2021)). That case does not apply here because it involves (1) a different statutory source of prejudgment interest, (2) Indiana-court-specific administrative rules implemented in response to COVID-19, and (3) dicta from the Indiana Court of Appeals.

under Indiana Rule of Professional Conduct 1.5(a). *See Community State Bank Royal Ctr. v. O'Neill*, 553 N.E.2d 174, 178 (Ind. Ct. App. 1990). Moreover, the Seventh Circuit—applying Indiana law—has consistently found prejudgment interest appropriate when damages depended on reasonableness. *E.g.*, *BRC Rubber*, 981 F.3d at 622, 636 (affirming prejudgment interest on "the costs of . . . cover" after a bench-trial finding that the cover was "commercially reasonable"); *Public Serv. Co. of Ind. v. Bath Iron Works Corp.*, 773 F.2d 783, 796–97 (7th Cir. 1985) (reversing the denial of prejudgment interest after the jury "had to determine whether [invoice] amounts were reasonable"). Indeed, "juries often have to make determinations about whether claimed damages are 'reasonable,' and if this were determinative, prejudgment interest would rarely be awarded." *Bath Iron Works*, 773 F.2d at 796–97. Indiana law thus does not bar prejudgment interest merely because damages rest on a reasonableness determination.

The case that Defendants rely on, *Kummerer v. Marshall*, does not apply here. 971 N.E.2d 198 (Ind. Ct. App. 2012). There, the trial court "did not err" in denying prejudgment interest after it had to determine the reasonableness of fees split under a contingency arrangement between "lawyers who [were] not in the same firm." *Id.* at 202. Here, damages were sought by and awarded to only Alerding Castor, which billed on an hourly basis. *See* dkt. 268 (jury verdict); plaintiff's trial exhibit 45 (Alerding Castor's invoices). So "*Kummerer* does not control," because this case had no contingency fee and "does not involve fee splitting or forecasting" which attorney would do what work. *Meridian Mut. Ins.*

4

*Co.v. Majestic Block & Supply,* 1 N.E.3d 173, 183 (Ind. Ct. App. 2013) (affirming prejudgment interest); *see Republic Servs. v. Bullaro & Carton, P.C.*, 985 N.E.2d 84 (Ind. Ct. App. 2013) (unpublished). This is therefore a standard case in which attorney-fee damages are "ascertainable by computation in accordance with fixed rules of evidence and known standards of value," making prejudgment interest appropriate. *O'Neill*, 553 N.E.2d at 178; *see Wickens v. Shell Oil Co.*, 620 F.3d 747, 758 (7th Cir. 2010) ("Thus, an attorney may recover prejudgment interest for bills related to litigation even though her client disputed the bill and the court rejected the attorney's proposed hourly rate.")[2].

    Defendants next argue that prejudgment interest is inappropriate because the jury had to determine "many credibility issues . . . in weighing the evidence." Dkt. 272 at 3. But under Indiana law, "[t]he 'ascertainable' standard refers to the amount of damages as distinguished from the liability for those damages." *Majestic Block*, 1 N.E.3d at 182. Even though *liability* was disputed here, Alerding Castor's *damages* are "ascertainable" and were "ascertained" under the parties' contract and Alerding Castor's invoices. *See id.*; dkt. 270. Even if any credibility disputes spilled over to damages too, that still does not prevent a prejudgment-interest award under Indiana law. *See Harlan Sprague Dawley, Inc. v. S.E. Lab Grp., Inc.*, 644 N.E.2d 615, 618–19 (Ind. Ct. App. 1994) ("Although the jury had to determine the credibility of

---

[2] *Wickens* affirmed the denial of prejudgment interest because the parties' settlement left unresolved which fees were billed in pursuit of the "statutory purpose" of the Underground Storage Tank Act, which allows fees to a successful plaintiff. 620 F.3d at 750–53, 758. Here, Alerding Castor pursued unpaid fees in this contract suit and its damages were conclusively resolved by the jury.

HSD's evidence and the appropriateness of HSD's calculations, HSD's damages were ascertained by calculation through accepted standards of valuation and fixed rules of evidence."); *BRC Rubber*, 981 F.3d at 635 (collecting Indiana cases).

Finally, Defendants argue that prejudgment interest should not be awarded because Alerding Caster recovered substantially less than it sought. Dkt. 272 at 4. The cases they cite, however, found prejudgment interest improper because a damages dispute—not a liability dispute—led to the substantially smaller recoveries. *See id. City of Anderson v. Salling Concrete Corp.* involved damages based on "the potential and actual value" of land, 411 N.E.2d 728, 735 (Ind. Ct. App. 1980), and *City of Evansville v. Rieber* involved damages based on "the fair rental value" of a home, 385 N.E.2d 217, 224 (Ind. Ct. App. 1979).

As more recent cases explain, prejudgment interest is proper when liability, instead of damages, was disputed. *See Majestic Block*, 1 N.E.3d at 182 ("The 'ascertainable' standard refers to the amount of damages as distinguished from the liability for those damages."); *Rollins Burdick Hunter of Utah, Inc. v. Bd. of Tr. of Ball State Univ.*, 665 N.E.2d 914, 923 (Ind. Ct. App. 1996). In *Rollins Burdick*, the Indiana Court of Appeals affirmed prejudgment interest after rejecting the argument that a jury award was not ascertainable because it "differed from the amount demanded." 665 N.E.2d at 923. The "comparative fault reduction" from the amount sought only "address[ed] the issue of liability and [did] not reflect that damages were arrived at through resort to

6

speculation." *Id.* The same is true here. *See Bath Iron Works*, 773 F.2d at 796 (explaining that the district court incorrectly denied prejudgment interest even though "the jury award was substantially less than . . . requested.").

In short, the jury's damages award was based on invoices from Alerding Castor that showed the work that Alerding Castor performed and the number of hours it spent. Under Indiana law, that supports prejudgment interest.

### 3. Jury Deliberations

Defendants argue that the Court imposed "but another species of 'prejudgment interest'" when it informed the jury about the possibility of continuing its deliberations the next day. Dkt. 272 at 6. Alerding Castor responds that Defendants' argument relies on "mere speculation." Dkt. 273 at 2.

The jury began deliberating about 11:00 a.m. on the third day of trial. At that time, the Court informed the jury that if it did not reach a verdict that day, it could continue deliberating the next day:

> Due to a scheduling obligation, I do have to adjourn court proceedings today at 4:30. However, I do not want you to feel at all rushed, because we do also have Thursday, tomorrow, set aside in the event that you wish to come back and to continue your deliberations. That will be entirely up to you how long that takes but I wanted to give you advanced notice of that scheduling issue.

Defendants cite no evidence that the jury had insufficient time to deliberate, or that more time could have changed their verdict. *See* dkt. 272. Even if they

7

had, they have not cited any authority showing that the length of deliberations can affect the appropriateness or amount of prejudgment interest.

* * *

Defendants' Rule 59(e) motion to vacate the award of prejudgment interest is therefore **DENIED**.  Dkt. [272].

### B. Rule 60(b) Motion to Set Aside the Judgment

Defendants argue that the judgment against them should be set aside because Alerding Castor committed fraud on the court when it didn't provide timekeeping records in discovery and when its witness, Michael Alerding, "committed perjury during trial." Dkt. 275.  Alerding Castor responds that "[t]here are no further [timekeeping] records to provide" and that there is no evidence of fraud or perjury.  Dkt. 278.

While Defendants cite Rules 59(a), 59(e), 60(b), and 60(d), dkt. 275 at 1, the Court treats the motion as a joint Rule 59(a) and Rule 60(b)(3) motion to set aside a judgment based on attorney misconduct.[3]  *See Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012) (The Rule 59(a) and 60(b)(3) standards are "substantially similar."); *Wickens*, 620 F.3d at 758–59.  "To obtain relief under Rule 60(b)(3), a party must show that she has a meritorious claim that she was prevented from 'fully and fairly presenting' at trial as a result of the adverse

---

[3] Defendants do not argue that a new trial is warranted for a "reason for which a new trial has heretofore been granted in an action at law in federal court" under Rule 59(a) and have not alleged facts that could show fraud on the Court under Rule 60(d).  *See Kennedy v. Schneider Elec.*, 893 F.3d 414, 419–20 (7th Cir. 2018) (explaining Rule 60(d)'s strict limitation to "circumstances where the impartial functions of the court have been directly corrupted.").

8

party's fraud, misrepresentation, or misconduct." *Wickens*, 620 F.3d at 758–59.  Rule 60(b) "relief is an extraordinary remedy" granted "only in exceptional circumstances."  *Id.* at 759.  Defendants therefore "must prove fraud by clear and convincing evidence" and show prejudice from that fraud.  *Id.*

### 1. Timekeeping Records

Defendants argue that the evidence at trial contradicts Alerding Castor's statement in discovery that it "does not keep 'time cards,' records for personnel charging to Defendants' underlying case, billing back-up, or records showing hourly rates of staff and attorneys."  Dkt. 275; dkt. 280; dkt. 117 at 2 n.1 (Alerding Castor's response to Defendants' motion to compel).  The only evidence Defendants cite is Mr. Alerding's testimony at trial that Alerding Castor used TABS software for attorneys to log their time in and to generate invoices for billing.  *See* dkt. 275 at 1,

Defendants appear to understand that testimony to mean that Alerding Castor kept timecards or similar records in addition to the invoices sent to Defendants—yet did not produce them in discovery.  *See* dkt. 275 at 1–2; dkt. 280 at 4–5.  But Defendants point to no testimony that undisclosed timekeeping reports exist.  *See* dkt. 280 at 4–5.  Instead, they argue that the TABS software manual shows that timekeeping reports can be "queried," "generated," and "printed."  *See id.* at 4.  Even if that is true, however, it does not disprove Alerding Castor's statement that it "does not keep" those records or show that Alerding Castor could have generated and provided any of those reports during discovery.  *See id.* at 4.

9

Defendants therefore have not shown a discovery violation. And even if there were a discovery violation, Defendants have not shown a misrepresentation or false statement to the Court, *see Fields v. City of Chicago*, 981 F.3d 534, 555 (7th Cir. 2020), so they have not bridged the gap "between an apparent discovery violation and fraud," *Wickens*, 620 F.3d at 759. Defendants therefore have "not come close to showing by clear and convincing evidence . . . that [Alerding Castor's] actions were fraudulent in nature." *Id.*

### 2. Alleged Perjury

Defendants argue that the Court allowed fraud when it excluded a recording that Defendants believe "prove[s] that [Mr.] Alerding lied under oath twice during the trial." Dkt. 275 at 4. Defendants revealed the recording's existence for the first time at the end of the second trial day. Alerding Castor objected that the recording wasn't produced in discovery, and Defendants admitted that they did not produce it. After further argument, the Court asked Ms. Wockner how long she had known about the recording. She responded that she didn't know about the recording and didn't know where it was. The Court again asked when she found out about the recording and warned her to think carefully before answering because an answer that was not "direct and forthright and honest" would result in sanctions. After pausing, Ms. Wockner responded only that she didn't know she had it because she didn't know how to use her tablet. The Court then found that sanctions were appropriate and would be determined later.

The Court next asked Ms. Wockner whether the recording was responsive to any of Alerding Castor's discovery requests, and she responded that she did not know at the time of the requests that the recording existed. The Court then ruled that the recording was inadmissible as a sanction for failing to answer the Court's questions, and that it was likely inadmissible under the discovery rules also.

In their motion for a new trial, Defendants cite no legal authority supporting their argument that the Court erred in excluding the recording as a sanction for failing to forthrightly explain its background after Defendants revealed it for the first time near the end of trial. *See* dkt. 275; dkt. 280. Nor do they cite any authority showing that the recording should not have been excluded under the discovery rules. *See* dkt. 275; dkt. 280. They therefore have not shown that the recording is evidence of fraud or that the Court's ruling that it was inadmissible could have prejudiced them at trial.

Defendants also argue that the Court "must review" the recording and investigate the alleged perjury because "to not do so condones perjury by officers of the Court and obscenely undermines the very premise of the Judiciary." Dkt. 280 at 5–6; *see* dkt. 275 at 4. But they have not identified evidence that proves fraud "by clear and convincing evidence," *Wickens*, 620 F.3d at 759; *see Provident Sav. Bank v. Popovich*, 71 F.3d 696, 699–70 (7th Cir. 1995), or that requires further inquiry. They proffered at trial that in the recorded call, Mr. Alerding told Ms. Wockner that their case was compelling and that the trial portion of the case would cost $20,000. Defendants do not

11

allege any other relevant content or explain why those statements can prove perjury rather than—at most—a flawed recollection after six years.  *See* dkt. 280.

*   *   *

Because Defendants were not prejudiced and cannot prove fraud, their Rule 60(b) motion to set aside the judgment is **DENIED**.

### C. Rule 59(a) Motion for New Trial

Defendants argue that an "ex parte communication by the Court to the jury rushed the jury to a premature judgment."  Dkt. 276 at 2; *see* dkt. 281.  This argument's sole factual premise is Defendants' allegation that the Court told the jury at about 3:45 p.m. on the third day of trial that "it was to render its decision within less than a half hour or that the jury would have to return the following day."  Dkt. 276 at 1–2.

But the Court never communicated with the jury off the record.  Rather, the Court's sole communication to the jury about the schedule of deliberations was made on the record at about 11:00 a.m., immediately before deliberations began:

> Due to a scheduling obligation, I do have to adjourn court proceedings today at 4:30.  However, I do not want you to feel at all rushed, because we do also have Thursday, tomorrow, set aside in the event that you wish to come back and to continue your deliberations.  That will be entirely up to you how long that takes but I wanted to give you advanced notice of that scheduling issue.

12

It therefore is not true that the Court "rushed the jury to a premature judgment . . . within a short period of time—less than about 15 minutes." Dkt. 276 at 2. Nor is it true that "the Court informed Defendant Fletcher by telephone" that such a communication had occurred. *Id.* at 1.[4]

Defendants' Rule 59 motion for a new trial on this basis is therefore **DENIED**.[5]

**SO ORDERED.**

Date: 12/16/2021

                                               *James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

PAUL FLETCHER
1203 E. Cota Street
Santa Barbara, CA 93103

CAROLE WOCKNER
1203 E. Cota Street
Santa Barbara, CA 93103

Michael J. Alerding
ALERDING CASTOR LLP
malerding@alerdingcastor.com

---

[4] At about the time that Defendants reference, Court staff called the parties only to ask that they begin to return to the courtroom in case the jury would have to be admonished and asked to return the next day, as discussed on the record before deliberations began. The jury's verdict—reached without any further communication from the Court—mooted that concern.

[5] Alerding Castor argues that, if such an ex parte communication occurred, it would not require a new trial. Dkt. 279. The Court does not address this argument since there was no off-the-record communication.

Michael E. Brown
KIGHTLINGER & GRAY LLP
mbrown@k-glaw.com

Abraham Murphy
murphy@abrahammurphy.com

Daniel Sheroff
ALERDING CASTOR LLP
dsheroff@alerdingcastor.com