**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 25, 2022[*]
Decided November 16, 2022

**Before**

DIANE S. SYKES, *Chief Judge*

DIANE P. WOOD, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 22-1101

| | |
|---|---|
| ALERDING CASTOR, LLP, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:16-cv-02453-JPH-MJD |
| PAUL FLETCHER and CAROLE WOCKNER, *Defendants-Appellants*. | James P. Hanlon, *Judge*. |

**O R D E R**

Carole Wockner and Paul Fletcher did not pay Alerding Castor, a law firm, for its legal work in representing them. The firm sued its former clients and, after a jury trial, obtained a judgment against them. Wockner and Fletcher contend on appeal that the district judge made three reversible errors—awarding prejudgment interest, ignoring their rights to some discovery, and excluding some of their evidence at trial.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. Fed. R. App. P. 34(a)(2)(C).

No. 22-1101 Page 2

We affirm. First, Indiana law authorized prejudgment interest here. Second, the judge reasonably handled their discovery requests, which sought duplicative information from the firm. Third, the judge reasonably excluded at trial evidence that Fletcher and Wockner had never properly disclosed earlier.

## Background

Wockner and Fletcher hired Alerding Castor to represent them in a forgery case. (For simplicity, we refer to the clients as "Wockner" and the law firm as "Alerding.") Wockner lost the case. After Wockner refused to pay Alerding, the firm sued her in Indiana court for breach of contract, seeking over $100,000 in fees. Wockner removed the suit to federal court based on diversity jurisdiction and filed counterclaims.

Discovery bogged down. Wockner asked Alerding to produce the "timesheets" of all employees who worked on the forgery case. Alerding responded that it had already produced all documents responsive to this request: its invoices listing how long employees worked on tasks and when they did those tasks. (Wockner does not contest that Alerding produced those invoices.) Wockner responded with motions to compel, and Alerding replied that, beyond the invoices, the timesheets that Wockner requested do not exist. A magistrate judge denied the motions, reasoning that Wockner's mere belief that Alerding kept other records was not enough to entitle her to relief.

The discovery dispute over timesheets continued. Wockner objected to the district judge, see FED. R. CIV. P. 72, about the magistrate judge's denial of her motion to compel. The district judge overruled her objections because, he said, another pending motion to compel before the magistrate judge obviated the first one. (By this time, however, the magistrate judge had resolved that other motion.) Wockner then asked the magistrate judge to amend pretrial deadlines so the district judge could order Alerding to produce its timesheets. The magistrate judge denied these requests because, as he saw it, the district judge had rejected Wockner's objections regarding the motion to compel. Later, after the district judge revisited Wockner's objections to the rulings on the motions to compel, the judge accepted the magistrate judge's rationale that the motions lacked merit. The district judge also entered partial summary judgment for Alerding on Wockner's counterclaims.

The case went to trial on Alerding's contract claim, and discovery issues resurfaced in two ways. First, several of Alerding's witnesses described how the firm uses billing software to record and bill time. This led Wockner to revive (to no avail) her belief that unproduced timesheets existed. Second, midway through trial, Wockner first

No. 22-1101    Page 3

revealed that she had a recording of a phone call with an Alerding attorney. She argued that the call proved the attorney had lied at trial about an estimate he had once given to Wockner describing the prospects of her forgery case and its anticipated legal fees. Alerding objected, saying Wockner had not timely produced this recording.

To resolve the objection about the undisclosed recording, the district judge asked Wockner two questions. First, he asked, "[H]ow long have you known about this recording?" Rather than answer "how long," Wockner asserted why she delayed revealing it: "I didn't know where it was. It's -- my son, my son --." The judge warned her that her answer was nonresponsive and that she needed to tell him "how long":

> THE COURT: [A]nswer this question or I'm going to sanction you. When did you find out about the recording? …
>
> MS. WOCKNER: I didn't know I had it. I did not know because I don't know how to use my tablet, a lot of the apps. My son sets everything up for me on my tablet.
>
> THE COURT: Okay. You have not answered my question … .

Second, the judge asked Wockner whether she considered this recording responsive to any of Alerding's discovery requests, and Wockner reiterated her previous response:

> THE COURT: … [W]as this covered by the written discovery requests served on you by the plaintiffs in this case?
>
> MS. WOCKNER: Was I asked? By whom? In a discovery request?
>
> THE COURT: By the plaintiffs in a written discovery request. Would this have been responsive, is this responsive to a written discovery request?
>
> MS. WOCKNER: Not that I knew at the time because I didn't know I had it and -- I did not know I had it. And I didn't know what the -- I did not know -- I knew I had a conversation with him, but I didn't know that I had it on a recording that was saved on my tablet that I don't know how to use. My son found it for me just a couple weeks ago when he was trying to take off the apps on it so that we could use it.

Deeming Wockner's answers nonresponsive, he excluded the recording from evidence.

No. 22-1101                                                                                                                                            Page 4

The trial ended the next day. The jury found Wockner liable, and it awarded Alerding just under $70,000 in damages. The judge entered judgment for Alerding and assessed approximately $30,000 in prejudgment interest.

Wockner filed postjudgment motions. First, she argued that the judge incorrectly assessed prejudgment interest: In her view, it was not available as a matter of law and the judge should have tolled interest attributable to pandemic-related delays in the trial date. Second, she moved for relief from judgment. See FED. R. CIV. P. 60(b)(3). Insisting that Alerding ignored its discovery obligations, she argued that evidence from trial proved that Alerding lied when it said that it did not keep timesheets. Finally, she contended, the judge erred in excluding her phone recording. The judge rejected these arguments.

## Analysis

On appeal, Wockner first maintains that the district judge erred by assessing prejudgment interest. She contends first that the law forbids it in this case. Under Indiana law (which applies in this diversity action), prejudgment interest is improper when a trier of fact cannot readily determine the value of the plaintiff's injury. *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 981 F.3d 618, 635 (7th Cir. 2020); *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 757 (Ind. 2018). Wockner contends that this rule was offended when the jury had to decide how many hours the firm worked on her forgery case. Because the jury found Wockner liable for fewer hours than Alerding sought, she concludes that the value of Alerding's injury was not readily ascertainable.

But Wockner focuses on the wrong issue—liability for unpaid hours—rather than the value of those hours. Prejudgment interest is appropriate when the trier of fact uses judgment to determine *what* the plaintiff lost so long as the trier of fact can readily decide the *value* of that loss. *BRC Rubber*, 981 F.3d at 635–36; *Five Star Roofing Sys., Inc. v. Armored Guard Window & Door Grp., Inc.*, 191 N.E.3d 224, 240 (Ind. Ct. App. 2022). Here, the jury permissibly used its judgment to decide how many hours of unpaid work Alerding performed. This determined the scope of liability, and juries may use judgment when deciding if and to what extent a party is liable. *Five Star*, 191 N.E.3d at 240.

Once the jury permissibly used its judgment to determine the scope of Wockner's liability, it did not have to use improper judgment to calculate the value of that liability. The value was a simple mathematical calculation of hours worked multiplied by an hourly rate. True, the jury had to decide if the rate (and the subsequent total) was

No. 22-1101                                                                                    Page  5

reasonable. Even so, a dispute over an hourly rate "does not alter the fact that" it is readily ascertainable, because fee determinations are guided by known standards of value. *Cmty. State Bank Royal Ctr. v. O'Neill*, 553 N.E.2d 174, 177–78 (Ind. Ct. App. 1990); see *BRC Rubber*, 981 F.3d at 636 (observing that decisions about the reasonableness of damages does not preclude prejudgment interest). And even if the jury had to use some judgment to decide the value of Wockner's liability, Indiana law gives a judge "considerable play in the joints" (to which we defer) to award prejudgment interest. *BRC Rubber*, 981 F.3d at 635; *Meridian Mut. Ins. Co. v. Majestic Block & Supply, Inc.*, 1 N.E.3d 173, 182 (Ind. Ct. App. 2013). Thus, the judge did not err by awarding prejudgment interest.

Wockner next argues that the judge should have tolled prejudgment interest because emergency orders during the COVID-19 pandemic delayed the case. For support, she cites only *Denman v. St. Vincent Medical Group, Inc.*, 176 N.E.3d 480 (Ind. Ct. App. 2021), *transfer denied*, 180 N.E.3d 942 (Ind. 2022), but that case is distinguishable. First, it held only that a court may not toll *post*judgment interest despite pandemic-related delays. See *id.* at 503. Second, it suggested in dicta that in a *tort* case prejudgment interest might be inappropriate if pandemic concerns delayed the proceedings. It reasoned that prejudgment interest in tort cases incentivizes settlement, and that incentive vanishes when a delay is beyond the parties' control. See *id.* at 500, 505; see also *Kosarko v. Padula*, 979 N.E.2d 144, 150 (Ind. 2012). But this is a contract dispute, where prejudgment interest serves a different goal—compensating plaintiffs for the lost use of their money. See *DeGood Dimensional Concepts, Inc. v. Wilder*, 135 N.E.3d 625, 637 (Ind. Ct. App. 2019); see also *BRC Rubber*, 981 F.3d at 634. The cause of the delay is irrelevant to that goal; therefore, tolling here was not required.

That brings us to the discovery dispute over the timesheets, the production of which the district judge refused to compel because of the absence of any evidence that Alerding maintained them. Wockner believes it "unfathomable" that Alerding does not keep the timesheets for each employee. The judge, she contends, abused his discretion by not compelling their production or ordering relief from judgment based on Alerding's "fraud" in denying their existence See FED. R. CIV. P. 37(a)(3)(B)(iv), 60(b)(3). As support, she relies on trial testimony that, she says, shows that the firm's employees enter their hours into software that the firm used to generate invoices.

But the testimony that Wockner cites does not support her contentions. It shows, at most, that Alerding's employees entered their time using software which stores that data electronically. Alerding can (and did) use the software to format the data into

No. 22-1101 Page 6

invoices and produce them to Wockner. Even if the software could generate new documents in a format that corresponds to "timesheets" for each employee, Wockner offers no evidence that reformatting data into these employee-specific timesheets would show information not already in the invoices. Thus, the district judge did not abuse his discretion when refusing to order Alerding to create new documents that would have been duplicative. See FED. R. CIV. P. 26(b)(2)(C)(i), 34(b)(2)(E)(iii). For the same reason, Wockner did not supply clear and convincing evidence of fraud that compelled the judge to award the "extraordinary" remedy of relief from judgment under Rule 60(b)(3). *Fields v. City of Chicago*, 981 F.3d 534, 558 (7th Cir. 2020).

Finally, Wockner argues that the judge abused his discretion by excluding Wockner's recording of the phone call with an Alerding attorney. She insists that the judge did not give her a chance to explain her delay in producing it because, she thinks, the judge asked vague questions and cut her off. In particular, she believes that the question, "[H]ow long have you known about this recording?" was unclear; the judge, she says, might have been referring to either the recording or its evidentiary value.

The judge did not abuse his discretion. First, he was appropriately skeptical of Wockner's midtrial revelation because a party's failure to include evidence in its pretrial disclosures generally results in the evidence's exclusion. See FED. R. CIV. P. 37(c)(1). Also, the judge's "how long have you known" question reasonably sought to determine if Wockner's delay in revealing the recording after she learned about it "was substantially justified or … harmless." *Id.* But Wockner refused to answer, and her excuse—the question could have referred either to the recording or its value—is unavailing. The judge's question began with "how long." Thus, the answer called for a unit of time. Yet Wockner refused to state the length of her delay—even after the judge warned her that she was evading his question—arguing only that her delay was justified. The judge also reasonably concluded that Wockner inadequately responded to his second question ("[W]as this covered by the written discovery requests … ?"). Rather than give a yes-or-no answer, Wockner again deflected by denying that she knew she had the recording. Because Wockner did not adequately answer either question meant to resolve whether she might be conducting a trial by ambush, the judge permissibly excluded evidence not disclosed until the middle of trial. See *Morris v. BNSF Ry. Co.*, 969 F.3d 753, 764–66 (7th Cir. 2020) (judge did not abuse discretion by excluding three witnesses disclosed less than a month before trial).

We have considered Wockner's other arguments, but she has not developed them enough to require discussion. Therefore, we AFFIRM.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

November 16, 2022

*Before*

DIANE S. SYKES, *Chief Judge*
DIANE P. WOOD, *Circuit Judge*
MICHAEL B. BRENNAN, *Circuit Judge*

| | |
|---|---|
| No. 22-1101 | ALERDING CASTOR, LLP, <br>           Plaintiff - Appellee <br><br> v. <br><br> PAUL FLETCHER and CAROLE WOCKNER, <br>           Defendants - Appellants |
| **Originating Case Information:** ||
| District Court No: 1:16-cv-02453-JPH-MJD <br> Southern District of Indiana, Indianapolis Division <br> District Judge James P. Hanlon ||

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

Clerk of Court

form name: **c7_FinalJudgment**   (form ID: **132**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

December 8, 2022

CERTIFIED COPY
A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

To:  Roger A. G. Sharpe
UNITED STATES DISTRICT COURT
Southern District of Indiana
United States Courthouse
Indianapolis, IN 46204-0000

| | |
|---|---|
| | ALERDING CASTOR, LLP, |
| | Plaintiff - Appellee |
| No. 22-1101 | v. |
| | PAUL FLETCHER and CAROLE WOCKNER, |
| | Defendants - Appellants |
| **Originating Case Information:** | |
| District Court No: 1:16-cv-02453-JPH-MJD | |
| Southern District of Indiana, Indianapolis Division | |
| District Judge James P. Hanlon | |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:                           No record to be returned

form name: **c7_Mandate**    (form ID: **135**)